UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:25-cr-00026-DJC |
| Plaintiff, | |
| v. | ORDER |
| KEVIN ANTONIO PARKER, et al., | |
| Defendants. | |

Defendant Devon Nelson, who has been charged with one count of distribution of fentanyl in a fifteen-count indictment, has moved to sever that count on the basis that evidence pertaining to the other Defendants' alleged narcotics and firearm transactions will unduly prejudice him because that evidence will have a "spillover" effect on the jury's consideration of Defendant Nelson's guilt. Having considered the Parties' briefing and arguments, the Court agrees, and will GRANT Defendant Nelson's motion.

**BACKGROUND**

On February 6, 2025, Defendant Nelson along with Defendants Kevin Parker ("K. Parker"), John Parker ("J. Parker"), Veronica Brooks, Xavier Surita, Raymundo Escobar ("R. Escobar"), and Marcelino Escobar ("M. Escobar") were charged in a fifteen-count Superseding Indictment stemming from an alleged conspiracy

1

orchestrated by deceased co-conspirator Delvonta Fields to possess and distribute narcotics.  (*See* Superseding Indictment (ECF No. 58); *see also* Opp'n Mot. Sever (ECF No. 111) at 3-4.)

Concerning Defendant Nelson, the Government alleges that a confidential informant agreed to purchase two pounds of methamphetamine and 4,000 hydrocodone pills laced with fentanyl from Fields on June 12, 2024.  (Mot. Sever (ECF No. 109) at 3.)  The confidential informant met Fields at his residence in Sacramento, where the confidential informant also met with Defendant Brooks.  (*Id.*)  Fields informed the confidential informant they would need to drive over to a Power Mart in West Sacramento for the fentanyl.  (*Id.*)  Fields and the confidential informant drove to the Power Mart in separate cars and parked in the parking lot.  (*Id.*)  Thereafter, Defendant Nelson entered the passenger's side of Fields' car carrying multiple round plastic bags.  (*Id.* at 4.)  Fields then exited his car, walked to the confidential informant's car, and entered on the passenger's side.  (*Id.*)  Fields informed the confidential informant that he would obtain the fentanyl from Defendant Nelson but needed to be paid first.  (*Id.*)  The confidential informant paid Fields for the fentanyl using government furnished funds.  (*Id.*)  Upon receiving the funds, Fields exited the confidential informant's car and walked back to his car where Defendant Nelson was waiting, at which point the United States asserts Defendant Nelson delivered the plastic bags in his possession to Fields in exchange for the confidential informant's money.  (*Id.*)  Thereafter, Fields exited his car and walked back to the confidential informant's car, entered the car, and delivered four plastic bags to the confidential informant, each containing approximately 1,000 fentanyl hydrocodone pills.  (*Id.*)

Based on these allegations, Defendant Nelson alone was charged in Count Six of the Superseding Indictment for distribution of 400 grams or more of fentanyl on June 12, 2024.  (Superseding Indictment at 3.)  The remaining Defendants K. Parker, J. Parker, Brooks, Surita, R. Escobar, and M. Escobar were charged with conspiracy to distribute and possess narcotics (Counts One and Two), unlawful dealing in firearms

(Count Three), distribution of fentanyl (Counts Four, Five, and Eleven), distribution of methamphetamine (Counts Seven, Eight, Ten, and Fifteen), distribution of heroin (Count Nine), felon in possession of a firearm (Counts Twelve and Fourteen), and unlawful possession and transfer of a machinegun (Count Thirteen) based on other incidents, many involving Fields, occurring before and after June 12, 2024. (*Id.* at 1–6.)

Defendant Nelson now moves the Court to sever Count Six from the remaining charges under Federal Rule of Criminal Procedure 14. (Mot. Sever at 5–6.) The Government had opposed severance. (Opp'n Mot. Sever at 2–5.) The Court heard oral argument on August 28, 2025, with Philip Cozens appearing for Defendant Nelson and Nicole Vanek appearing for the United States. The matter was taken under submission.

### LEGAL STANDARD FOR MOTION TO SEVER

Federal Rule of Criminal Procedure 8(b) "permits the joinder of defendants who allegedly committed the same crime." *United States v. Mayfield*, 189 F.3d 895, 899 (9th Cir. 1999). There is a preference in the federal system for joint trials of defendants who are indicted together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). However, Federal Rule of Criminal Procedure 14 provides that a court may sever counts and conduct separate trials for those counts "[i]f the joinder of offenses . . . appears to prejudice a defendant or the government . . . ." Fed. R. Crim. P. 14. Rule 14 requires the moving party to demonstrate "manifest prejudice" which is more "exacting" than the standard under Rule 8. *United States v. Jawara*, 474 F.3d 565, 579 (9th Cir. 2007). "The test is whether joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." *United States v. Inzunza*, No. 03CR2434-JM, 2005 WL 8160867, at *2 (S.D. Cal. Mar. 10, 2005). Even if there is prejudice, Rule 14 does not necessarily require severance; "rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538–39.

3

**DISCUSSION**

Defendant Nelson argues that severance of Count Six is proper here because he is the sole defendant charged with distribution of fentanyl on June 12, 2024; he is not charged with conspiring with any other Defendant; and the evidence concerning the other fourteen counts will likely "spillover" into the jury's consideration of the sole charge against him, which would cause him undue prejudice. (Mot. Sever at 5–6.)

The Court agrees. In *United States v. Douglass*, 780 F.2d 1472 (9th Cir. 1986), the Ninth Circuit recognized that a great disparity in the amount of evidence introduced against joined defendants may, in some cases, be grounds for severance. *Id.* at 1479. The primary consideration in deciding whether to grant or deny severance is whether "the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence." *Id.* (quoting *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980)).

For example, in *United States v. Donaway*, 447 F.2d 940 (9th Cir. 1971), the court held that the district court erred in denying the defendant's motion to sever. The defendant, Donaway, was implicated in one incident in a much broader illegal horse race betting scheme. *Id.* at 942. His codefendant, Swank, was the alleged hub of the scheme and the overwhelming majority of the evidence introduced at trial related to him. *Id.* at 942–43. Although the defendants had originally been charged with conspiracy and joined for trial on that basis, the conspiracy charge was dismissed prior to trial. *Id.* at 943. Therefore, while the district court was not required to grant severance after dismissing the conspiracy count, given the overwhelming amount of evidence at trial not involving Donaway, the Ninth Circuit held "it impossible to conclude on the facts here that appellant was not severely prejudiced by the evidence relevant only to the co-defendants." *Id.* Thus, the court held that the district court's "failure to sever as to appellant was an abuse of discretion" in violation of Rule 14. *Id.*
////

4

Similarly, in *United States v. Maranghi*, 718 F. Supp. 1450 (N.D. Cal. 1989), the court granted severance where the defendant was only "charged with the distribution of approximately one-half gram of cocaine on January 11, 1989," explaining:

> The evidence relevant to that one transaction will be dwarfed by that offered to prove the existence of an international drug conspiracy involving a dozen other defendants and an untold number of other deals – all irrelevant to the offense with which [defendant] has been actually charged, the *only* offense the government is willing to prove against him. The possibility for prejudice by association is enormous. During trial there would be an endless litany of admonitions as to whom each piece of evidence was admitted. The jury would be saddled with the hopeless task of segregating the facts. The same analysis applies in varying degrees to the other defendants charged with individuated offenses during discrete time periods.

*Id.* at 1452 (emphasis in original).

Here, much like in *Donaway* and *Maranghi*, there is no dispute that the bulk of the evidence that will be presented at trial involves Fields and his alleged conspiracy to source and distribute narcotics with Defendants K. Parker, J. Parker, Brooks, Surita, R. Escobar, and M. Escobar. (*See* Opp'n Mot. Sever at 3–4.) Defendant Nelson is not charged with engaging in that conspiracy beyond sourcing fentanyl for Fields on a singular occasion. Thus, Defendant Nelson argues he will be prejudiced if he is tried with the other Defendants because "[a]lthough Defendant had almost no interaction with the Parkers or the Escobars, the jury spillover would be that Defendant must be involved with the Parkers or the Escobars or both." (Mot. Sever at 4.)

In opposition, the Government argues that "merely pointing out that there are other defendants and other conduct is insufficient to establish manifest prejudice." (Opp'n Mot. Sever at 3.) The Government further argues that, even if Defendant Nelson could demonstrate some prejudice stemming from a joint trial, he has not shown why other relief, such as a curative jury instruction, could alleviate his concerns. (*Id.* at 4–5.)

The Court acknowledges that this is not a clear-cut case where severance is compelled because Defendant Nelson has pinpointed reasons why a joint trial would be manifestly prejudicial such as "inconsistent defenses, violation of his confrontation rights, or unavailability of any codefendants' exculpatory testimony." *See United States v. Baker*, 10 F.3d 1374, 1389 (9th Cir. 1993), *as amended* (Dec. 13, 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000). However, the Superseding Indictment and Complaint charge numerous firearm and narcotics transactions spanning from November 2023 through January 2025 that do not involve or implicate Defendant Nelson. (*See* Superseding Indictment at 1–6; *see also* Compl. (ECF No. 1).) Given the likely volume of evidence that will not involve Defendant Nelson, and the relatively minor role played by Defendant Nelson in the narcotics conspiracy orchestrated by Fields, the Court finds that that the risk of evidentiary spillover is likely to prejudice Defendant Nelson even if the Court were to issue curative instructions to the jury. *See United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994) ("Severance has been granted [in federal cases] when the charges brought against the defendants or the weight of the evidence supporting each charge is wholly disparate or disproportionate.").

In addition, when assessing prejudice, courts also look to whether "all of the evidence of the separate count would be admissible upon severance . . ." as there is typically no prejudice if the same evidence will be admitted regardless of severance. *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987). Here, the Government argues that "if severed, judicial economy would be injured . . . [because the] [G]overnment would still be forced to present the same evidence and call the same witnesses to testify about the entire investigation, which would relate to all 15 counts charged in the Superseding Indictment." (Opp'n Mot. Sever at 4.) The Court is unpersuaded. While the Government may need to present some overlapping evidence as to Fields and the confidential informant if the Court grants separate trials, given the isolated nature of the incident involving Defendant Nelson, such overlap

should be minimal at best, weighing in favor of severance.  *Cf. Baker*, 10 F.3d at 1389

(finding severance improper when "all Appellants were charged in the

methamphetamine conspiracy" because, "[a]lthough some Appellants may not have

been mentioned frequently by name during the trial, the voluminous evidence of this

conspiracy and of the overt acts in furtherance of it was relevant to all defendants, and

thus would have been admissible even in separate trials").

**CONCLUSION**

For the above reasons, IT IS HEREBY ORDERED that Defendant Nelson's Motion

to Sever (ECF No. 109) is GRANTED.

IT IS SO ORDERED.

Dated:   **September 3, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC4 – Nelson25cr00026.MotSever

7